UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

EUGENE D. WILLIAMS,

                              Plaintiff,

        -against-                                          3:06-CV-1355 (LEK/DRH)

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                              Defendant.

_____

## <u>MEMORANDUM-DECISION AND ORDER</u>

## I.      INTRODUCTION

Plaintiff filed for Disability Insurance Benefits ("DIB") and Supplemental Security Income

("SSI") under the Social Security Act on December 27, 2004.  Plaintiff alleged he became disabled

in November 2004 due to back pain, allergies, and learning disorders.  Tr. 128.  Administrative

Transcript ("Tr.") 72-76.  The applications were denied both initially and on reconsideration.  Tr.

338-42.

Plaintiff then requested a hearing by an ALJ which was held on January 25, 2006.  Tr. 36,

354-92.  Plaintiff and his representative appeared at the hearing before ALJ Elizabeth W.

Koennecke who considered the case *de novo* and on May 15, 2006, denied Plaintiff's applications.

Tr. 12-24.  Plaintiff then filed a request for review of the ALJ's decision with the Appeals Council

on July 13, 2006.  Tr. 11.  The ALJ's decision became the final decision of the Commissioner when

the Appeals Council denied Plaintiff's request for review on September 8, 2006.  Tr. 7-10.  This

action followed.

Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Compl. (Dkt. No. 1).  Both parties have moved for judgment on the pleadings.  Dkt. Nos. 5, 6.  For the reasons that follow, the Commissioner's determination of no disability is vacated, and the matter is remanded for further administrative proceedings.

## II.   BACKGROUND

### A.  Procedural History

Eugene D. Williams ("Plaintiff") filed the instant action for DIB and SSI on December 27, 2004.  Tr. 72-76.  Plaintiff's claim for disability insurance benefits was denied initially on March 4, 2005.  Tr. 31-35.  Plaintiff filed a timely request for hearing on March 17, 2005.  Tr. 36.  Two administrative hearings were held on September 9, 2005 and January 25, 2006.  Tr. 351-353, 354-392.  Following the second administrative hearing, an unfavorable decision was rendered on May 15, 2006.  Tr. 12-24.  On July 13, 2006, Plaintiff filed a request for review of a hearing decision. Tr. 11, 344- 350.

The appeals council issued a notice of appeals council action on September 8, 2006.  Tr. 7-10. In this notice, the appeals council denied Plaintiff's further request for review, thereby rendering the unfavorable decision of the Administrative Law Judge ("ALJ") the final decision of the Commissioner of Social Security.  Tr. 7-10.  On November 8, 2006, Plaintiff filed a Complaint in the United States District Court for the Northern District of New York.  Dkt. No. 1.  In that Complaint, Plaintiff alleges that the finding of the Commissioner of Social Security that Plaintiff is not disabled was not based upon substantial evidence and involves a clear error of law because the ALJ failed to give proper weight to the treating physician's opinions; improper discounted

2

Plaintiff's non-exertional impairments, and thus didn't consider the concomitant effects of the Plaintiff's exertional and nonexertional impairments; and that the Commissioner failed to satisfy her burden at step five of the sequential evaluation process.  Dkt. Nos. 1, 5.

### B. Plaintiff's History

Plaintiff's date of birth is June 9, 1977.  Tr. 72.  Plaintiff has a Special Education High School Diploma.  Plaintiff's only past significant work is that of a heavy laborer, and Plaintiff does not have past relevant work as defined by the Social Security Administration.  Plaintiff has not engaged in any substantial gainful activity since the alleged onset of disability, November 1, 2004. Tr. 22.

### C. Medical Records

Plaintiff was initially seen in the emergency room in July 2002 for an onset of back pain associated with heavy lifting at his job, and then follow-up was taken with Dr. Giannone of the Deposit Family Health Center.  Tr. 166.  X-rays taken at the emergency room were negative and pain seemed to resolve without treatment.  Tr. 166.  Plaintiff treated with his family physician, Dr. Giannone, who noted that Plaintiff performed heavy labor type activities, and that Plaintiff could be suffering from some type of repetitive strain injury to his back.  Tr. 175-223.

Dr. Giannone's extensive treatment notes indicate relatively minor medical concerns through late 2004, which is the time Plaintiff alleges for onset of his disabling symptoms.  Tr. 175-224. Plaintiff has had referrals to two specialists, Dr. Daniel Galyon and Dr. Kammerman.  Dr. Galyon initially saw Plaintiff in November 2002.  Tr. 224.  An MRI was performed at that time, which revealed a disc protrusion, and physical therapy was recommended at that time.  Tr. 224.

Dr. Gaylon continued to treat Plaintiff, and in November 2004, he requested an assessment

3

from Dr. Eric Seybold, who indicated that Plaintiff had "slight L-5 spondylolisthesis, which is probably secondary to bilateral L5 spondylolysis," and "[s]mall right postural disc protrusion" with "[n]o evidence of focal left sided abnormality." Tr. 278. Dr. Giannone diagnosed Plaintiff with a lumbosacral spondylolisthesis. Tr. 217. At this time, testing for strength was normal bilaterally and the relevant MRI studies did not show neutral compression in the neck region. Tr. 219.

A subsequent MRI was performed in December 2004. Tr. 248. That MRI revealed a worsening in Plaintiff's back condition. Tr. 248. The MRI at that time revealed "very small central C5-6 and C6-7 disc protrusions," and Plaintiff was restricted at that time from extensive lifting, twisting or heavy pushing and pulling activities. Tr. 248. Plaintiff also began to develop some cervical radiculopathy. An MRI of the cervical spine also revealed a cervical disc herniation although without nerve root compression. Tr. 248.

An orthopedic consultation was made with a referral to Dr. David Kammerman in May 2005. Tr. 272. Dr. Kammerman noted that Plaintiff had trouble walking and diffuse tenderness upon physical examination. Tr. 272. Plaintiff's strength in the upper extremities was 5/5, and Dr. Kammerman noted that although "[t]he patient's condition has been very disabling for him," he did not believe that Plaintiff "has a structural problem that is progressing." Tr. 275. Dr. Kammerman further opined that "the significant lack of activity is a problem," noting that Plaintiff should be weaned off his cane because it "contributes to a disability model." Tr. 275. Finally, Dr. Kammerman recommended medial branch injections, which he said "may help reduce some of the inflammation and swelling associated with chronic disc protrusion and spondylolisthesis." Tr. 275.

Dr. Kammerman has continued to treat Plaintiff throughout 2005 and early 2006. He found Plaintiff to have continuing low back syndrome with spondylolisthesis throughout the end of 2005.

4

Plaintiff exhibited difficulty in ambulation even while he utilized a cane. Tr. 278. Dr. Kammerman believed that Plaintiff was unlikely to return to any of his former employment activities. Tr. 278.

During a visit to the emergency room in August 2005, a CT scan indicated Plaintiff had "spondylsis of L5" and "some degenerative facet joint disease at L5-S1 on the right side." Tr. 295. This report concluded that Plaintiff had "[b]ilateral L5 spondylolysis with just a hint of spondylolisthesis of L5," and "mild to moderate spinal stensosis at L4-5 related to degenerative disc disease with minor bony spurring and primarily diffuse disc bulging." Tr. 295.

In August 2005, Plaintiff visited his family doctors at United Health Services and continued treatment of his ongoing backpain. Tr. 308. Documentation from this visit indicates that Plaintiff's symptoms were aggravated by sitting or standing, that the pain radiated down both of his legs, and that the left leg experienced more pain. Tr. 311. Straight leg raising was somewhat positive bilaterally (to 60 degrees of the right and the left foot), and there was marked paraspinal spasm of the lumber area. Id. at 312. Naprosyn was prescribed to treat Plaintiff's pain. Id.

On a visit in October 2005, Dr. Kammerman listed Plaintiff's diagnosis as "[l]umbar pain syndrome with right lumbar radiculopathy and L5-S1 spondylolisthesis with bilateral spondylolysis." Tr. 326. At this time, Dr. Kammerman decided to discontinue medial branch injections, and instead to try lumbar epidural steroid injections. Dr. Kammerman noted that, "[t]he patient remains unable to work and continues to ambulate slowly with a straight cane." Tr. 326. It was later noted that these injections had led to "no improvement." Tr. 329.

Dr. Kammerman had a meeting with Plaintiff in December 2005 to discuss "his MRI from 11/16/04 showing slight L5-S1 spondylolistehsis with bilateral L5 spondylolysis with bilateral L5 spondylolysis most likely," and "a small right posterolateral L4-5 disc protrusion." Tr. 334. Dr.

5

Kammerman and Plaintiff had "a long talk about altering his lifestyle demands," and Dr.

Kammerman was "not sure that he can really go back to" his previous landscaping work. Dr.

Kammerman concluded that the "most realistic thing to consider would be surgery to repair this."

Tr. 334.

Dr. Galyon, the doctor that had earlier treated Plaintiff, submitted a medical source statement

dated May 25, 2005. Tr. 280-83. Dr. Galyon concluded that Plaintiff could occasionally lift up to 25

pounds, frequently lift 20 pounds, had no restrictions on his ability to walk and/or stand, had no

restrictions on his ability to sit, and could not push/pull more than 50 pounds. Tr. 280-81. In terms

of Plaintiff's postural limitations, Dr. Galyon concluded that his ability to climb, kneel, crouch, and

crawl are occasionally affected, and his ability to balance is frequently affected. Tr. 281. Finally,

Dr. Galyon concluded that Plaintiff did not have limitations on manipulative functions such as

handling, fingering, and feeling, and did not indicate on the form whether Plaintiff had restrictions

on his ability to reach in all directions. Tr. 282.

Dr. Kammerman submitted a medical assessment dated June 23, 2005 that concluded

Plaintiff can lift no more than 20 pounds for 2 hours, can walk only 2-4 hours per day, can sit for no

more than 2-4 hours per day, and should never climb, balance, stoop, crouch, kneel, or crawl. Tr.

285-86. Dr. Kammerman also indicated that Plaintiff's ability to reach, handle, feel, and push/pull

were affected by this back condition. Tr. 287. Finally, Dr. Kammerman concluded that Plaintiff

had environmental restrictions from his impairment, including heights, moving machinery, and

vibration. Tr. 287. According to Dr. Kammerman, all of these restrictions resulted from lumbar

and/or cervical strain. Tr. 285-87.

Plaintiff later submitted "clarifying evidence" from Dr. Kammerman. Tr. 333-37. Dr.

6

Kammerman listed Plaintiff's current diagnosis as "bilateral L5 Spondylolysis and L4/5 disc protrusion." Tr. 336. Dr. Kammerman listed MRI as the objective testing that served as the basis for this diagnosis. Id. Under limitations, Dr. Kammerman listed "severe low back pain and bilat [sic] leg pain requires cane for ambulation." Tr. 337. For the cause of these limitations, Dr. Kammerman listed "severe low back pain since 2/02." Id. Finally, for current treatment, Dr. Kammerman wrote that Plaintiff was "[r]eferred to Dr. Seybold who has recommended a discogram." Tr. 337.

The state agency expert medical file reviewer concluded that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, stand for about 6 hours in an 8 hour workday, sit for 6 hours in an 8 hour workday, and could push/pull in an unlimited manner except for the limitations shown in lifting and carrying. Tr. 251. The medical file reviewer found that Plaintiff has "slight L5-S1 spondylolisthersis" with "small right posterolateral L4-5 dis protursion [sic]." Tr. 251. This reviewer further noted that Plaintiff has a "decent range of motion of cervical spine," "good strength of upper extremities without any sign of hyperreflexia," is "limited in his range of motion of lumbar spine in forward flexion and extension and . . . has decent strength and sensation," and that Plaintiff's "gait is quite steady and stable." Tr. 251.

The medical file reviewer analyzed Plaintiff's objective medical tests and found that "review of MRI scan of neck shows no sign of neural compression and the flexion and extension x-rays (LS spine) show bilateral L5 lysis with minimal movement with flexion and extension." Tr. 251. The medical file reviewer concluded that Plaintiff has no postural limitations, no manipulative limitations, no visual limitations, no communicative limitations, and no environmental limitations. Tr. 251. The medical file reviewer determined that Plaintiff's alleged symptoms, including the

7

inability to "do standing sitting, walking, bending over, climbing for long periods of time," were "not supported by medical findings" and were "not credible to extent alleged and do not preclude work." Tr. 254. Finally, the medical file reviewer noted that Plaintiff "does have past relevant work as a dye machine worker," and concluded that "the medical evidence in file supports clmt's being able to return to this work." Tr. 255.

As noted above, Plaintiff also alleges disability out of learning disabilities and mental impairments. Plaintiff was evaluated by Dr. Christine Ransom, Ph.D . In her report dated September 26, 2005, Dr. Ransom found a full scale IQ of 66, a verbal IQ of 68, and a performance IQ of 70. Tr. 299. She found that Plaintiff could do basic activities of daily living such as dressing and bathing, but could not cook, clean, or do laundry. Tr. 299. He could not manage his own funds due to his low intellect. Tr. 299. He was not able to drive or take the bus. Tr. 299. He could only understand and follow simple instructions and perform simple rote tasks, and he could only learn new tasks if they were simple. Tr. 299.

### C. The Hearing

A first administrative hearing took place on September 9, 2005. However, the transcript reveals that no substantive discussion nor any testimony took place at that hearing. Tr. 353. The ALJ indicated to Plaintiff's attorney at a second hearing held on January 25, 2006 that she felt that the opinions of Dr. David Kammerman provided in a residual functional capacity of June 23, 2005 needed clarification, and Plaintiff asserts that subsequent information submitted to the judge was clarifying. Tr. 389, Pl.'s Br. at 5-6. At the second administrative hearing held on January 25, 2006, Plaintiff appeared and testified. Tr. 360-81. A vocational expert, Dr. David Festa, also appeared and testified at that hearing. Tr. 381-388.

8

Plaintiff testified as to his ongoing daily back pain. Tr. 370-73. His current medications include Naprosyn, and he stated these medications make him feel tired. Tr. 376. He is also on Vicodin which makes him feel sick and gives him a feeling of being out in the clouds. Tr. 376. He has had various other modalities of pain control which have been of little help including injections, physical therapy and chiropractic care. Tr. 376.

Plaintiff testified that the pain exists in his lower back and radiates into both legs and especially his right leg; and that he also has pain in his mid-back. Tr. 370. He can sit for no more than 30 to 45 minutes, stand for no more than 30 to 45 minutes, walk no more than one mile, he cannot lift more than a gallon of milk, and his typical day involves getting up around 8:30 and watching his three children. Tr. 371. His wife performs the housework and does the grocery shopping. Tr. 375. According to Plaintiff, he has difficulty sleeping due to his pain and tosses and turns throughout the night. Tr. 377. He also says he needs to take naps throughout the course of the day as a result of his pain. Tr. 378.

As noted above, David Festa, a vocational expert also appeared and testified. Tr. 380-92. David Festa was provided a first hypothetical question involving an individual with Plaintiff's age, education and work history who "can lift or carry 25 pounds regularly, 50 pounds occasionally . . . shouldn't push or pull more than 50 pounds," has no limits on "standing, walking or sitting," "can occasionally climb, knee, crouch, crawl, or stoop and frequently balance and there are no other limitations." Tr. 382. The vocational expert testified that while such a person could not perform Plaintiff's prior work, he could perform jobs as a routing clerk, a racker, and a cafeteria attendant. Tr. 383.

Mr. Festa was also provided a second hypothetical of a person who could lift and carry up to 20

9

pounds occasionally, stand and walk up to four hours a day, should never climb, balance, stoop, crouch, kneel or crawl, could reach, handle, feel, and push and pull only occasionally, and should not be subjected to heights or moving machinery or vibration.  Mr. Festa responded that such a person could not perform Plaintiff's past work and could not perform work on a full-time basis in the national economy.  Tr. 384.

## III.         LEGAL STANDARD

### A. Standard of Review

District courts have jurisdiction to review claims contesting a final decision by the Commission of Social Security denying disability benefits.  42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3).  In reviewing any such claim, a district court may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, it must defer to the Commissioner's determination unless the correct legal standards were not applied or substantial evidence in the record does not support the determination.  Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).  Thus, even where substantial evidence supports an ALJ's conclusion, if "there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."  Id.  Likewise, a reviewing court should remand any case where an ALJ fails to set forth with sufficient specificity the crucial factors underlying a determination such that the court is able to decide whether that determination is supported by substantial evidence, and the case should be remanded.  Ferraris v. Heckler, 728 F.2d

582, 587 (2d Cir. 1984); see also  Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982) (remand is appropriate where a reviewing court is "unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required").

"Substantial evidence" requires more than a mere scintilla of evidence, yet less than a preponderance.  Sanchez v. NLRB, 785 F.2d 409 (2d Cir. 1986).  It has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Ryan v. Astrue, 650 F. Supp. 2d 207, 216 (N.D.N.Y. 2009).  Where evidence is susceptible to more than one rational interpretation, a court may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted).

A district court has the authority to affirm, reverse, or modify a final decision of the Commissioner with or without remand.  42 U.S.C. § 405(g).  Granting judgment on the pleadings is appropriate where the material facts are undisputed and where a court may make a judgment on the merits with reference only to the contents of the pleadings. FED. R. CIV. P. 12(c); Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988).  Remand is warranted where there are gaps in the record and further development of the evidence is needed, or where the ALJ has applied an

11

improper legal standard. See Butts, 388 F.3d at 385; Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999); Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980). Remand is most appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996) (citation omitted). Additionally, remand is appropriate to allow for the consideration of additional new evidence which is material to the case and where good cause exists for the failure to submit that evidence in prior proceedings. Melkonyan v. Sullivan, 501 U.S. 89 (1991); Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983). By contrast, reversal and remand solely for calculation of benefits is appropriate when there is "persuasive proof of disability" and further development of the record would not serve any purpose. Rosa, 168 F.3d at 83; Parker, 626 F.2d at 235; Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 644 (2d Cir. 1983).

**B. Benefits Eligibility**

Under the Social Security Act, an individual is disabled if he is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). The Social Security Administration ("SSA") uses a five-step sequential evaluation process to determine whether a claimant over the age of 18 is disabled under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520; see also Bowen v. Yuckert, 482 U.S. 137 (1987) (upholding the validity of this evaluation process); Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 200) (citing DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998)). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." Barnhart v. Thomas, 540 U.S. 20, 24 (2003). The plaintiff bears the burden of proof for the first four steps, and the Commissioner bears that burden in step five. See Bowen, 482

U.S. at 146; Shaw, 221 F.3d at 132.

20 C.F.R. § 404.1520 details the SSA's five-step analysis: at step one, the ALJ considers whether the claimant is currently engaged in substantial gainful activity.[1] If the claimant is not engaged in such activity, the ALJ advances to step two of the analysis and considers whether the claimant has a severe impairment meeting the "durational requirement"[2] and significantly limiting her physical or mental ability to perform basic work activities. In making this determination, the ALJ does not consider the claimant's age, education, or work experience. Assuming the ALJ finds the claimant has a severe impairment(s), the ALJ continues to step three and determines whether the impairment(s) meets or equals any of those listed in Appendix 1, Subpart P of Regulation No. 4 ("the Listings"). If the ALJ concludes that the claimant's impairment(s) does meet or equal one or more of the Listings, the claimant is deemed disabled. If the claimant's impairment(s) does not meet or equal one of the Listings, the fourth step of the evaluation requires the ALJ to assess whether, despite the claimant's severe impairment, the claimant's residual functional capacity ("RFC")[3] allows him to perform his past work.

If the claimant is unable to perform her past work, the fifth step in the sequential analysis is a two-part process which requires the ALJ to first assess the claimant's job qualifications by

---

[1] 20 C.F.R. § 404.1572(a) defines "substantial work activity" as "work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(b) defines "gainful work activity" as "the kind of work usually done for pay or profit."

[2] The impairment must either be expected to result in death or must last for, or be expected to last for, a continuous period of at least 12 months. 20 C.F.R. § 404.1509.

[3] RFC is defined as the most a claimant can do after considering the effects of all her medically determinable physical and mental limitations, including those not deemed "severe." See 20 C.F.R. § 404.1545; SSR 96-8p.

considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that she could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler, 461 U.S. 458, 460 (1983).  Where a claimant only suffers from exertional impairments, the grids are conclusive of the existence of a disability; where, however, "a claimant suffers from additional 'nonexertional' impairments, the grid rules may not be controlling." Id. at 605.


## IV.   DISCUSSION

### A. The Commissioner's Decision

Following the hearings, the ALJ made the following determinations, which the Commissioner subsequently adopted as his final decision:

(1) The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision,

(2) The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

(3) The claimant's lumbar spondylolysis, and mild mental retardation, are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(c).

(4) These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

(5) The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

(6) The claimant has the following residual functional capacity: lift/carry 25 pounds occasionally and 20 pounds frequently, push/pull up to 50 pounds with unlimited sitting, standing, and/or walking, but occasional climbing, kneeling, crouching, crawling, or stooping.  The claimant retains the ability (on a sustained basis) to understand, carry out, and remember simply instructions, to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.

(7) The claimant is unable to perform his past relevant work (20 CFR §§ 404.1565 and 416.965).

(8) The claimant is a younger individual between the ages of 18 and 44 (20 CFR § 404.1563 and 416.964).

14

(9) The claimant has a high school education (20 CFR §§ 404.1564 and 416.964).

(10) The claimant has no transferable skills from any past relevant work (20 CFR §§ 404.1568 and 416.968).

(11) The claimant has the residual functional capacity to perform a significant range of light work (20 CFR §§ 404.1567 and 416.967).

(12) Although the claimant's non-exertional limitations arguably might not allow him to perform the full range of light work, using Medical-Vocational Rule 202.20 as a framework for decision-making, there are still a significant number of jobs in the national economy that he could perform.  Examples of such jobs include work as (1) a routing clerk (Dictionary of Occupational Titles [DOT] # 222-687.022), with about 747,000 jobs nationally and about 45,000 regionally; (2) a racker [DOT # 524-687.018), with about 504,000 jobs nationally and about 14,000 regionally; and (3) a cafeteria attendant (DOT # 311-677.010), with about 390,000 jobs nationally and about 18,000 regionally).

(13) The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

### B. Five-Step Analysis

#### 1. Substantial Gainful Activity

Step one of the five-step analysis requires the ALJ to consider "whether the claimant is currently engaged in substantial gainful activity." 20 C.F.R. § 404.1520.  The ALJ found that Plaintiff "has not engaged in substantial gainful activity since his alleged date of onset," a conclusion that is not in dispute.  Tr. 17.

#### 2. Severity of Impairment

If a claimant is not engaged in substantial gainful activity, the ALJ must next consider whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520.  The ALJ determined that Plaintiff had the following impairments considered "severe" under the Act: lumbar spondylolysis and mild mental retardation.  Tr. 18.  This conclusion is not in dispute.

#### 3. Listed Impairment

If the claimant is not performing substantial gainful work and has a "severe impairment," the

15

third inquiry is whether, based solely on the medical evidence, the claimant has an impairment which is listed in the Listings. 20 C.F.R. § 404.1520. The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in the Listings. Tr. 18. This conclusion is not in dispute.

### 4. Past Relevant Work

If the plaintiff's impairment does not correspond to one on the Listings, the fourth step is to inquire whether, despite the plaintiff's severe impairment, he has the RFC to perform his past work. 20 C.F.R. § 404.1520. The ALJ concluded that, in light of Plaintiff's RFC, Plaintiff is unable to perform any of his past relevant work, a conclusion that is also not in dispute. Tr. 21.

### 5. Ability to Perform Work That Exists in the National Economy

Once Plaintiff has established that he cannot perform his past relevant work, under the final step in the sequential analysis, the burden shifts to the SSA to demonstrate that other work exists in significant numbers in the national economy that accommodates Plaintiff's RFC. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984). This final step of the five-part inquiry is, itself, divided into two phases. First, the ALJ must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the ALJ must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g), 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460 (1983).

The ALJ found that Plaintiff retained the RFC to perform a significant range of light work, as defined in 20 C.F.R. § 404.1567 and 416.967. Tr. 21. The ALJ further concluded that, considering Plaintiff's age (a "younger individual" as defined in 20 C.F.R. § 404.1463), education

16

("high school education" under 20 C.F.R. § 404.1564), and RFC (light work), there are jobs that exist in significant numbers in the national economy which Plaintiff can perform; in reaching this conclusion the ALJ employed the medical-vocational guidelines as a framework and considered the testimony of a vocational expert. Tr. 22. In particular, the ALJ found that although Plaintiff's exertional limitations do not allow him to perform the full range of light work, he could work as a routing clerk, a racker, and a cafeteria attendant. Tr. 23.

### C. Plaintiff's Objections to the ALJ's Decision

Plaintiff argues that reversal or, in the alternative, remand is appropriate because, in reaching the determination that Plaintiff is not "disabled" under the Act, the ALJ  improperly discounted the opinions of the treating physicians; improperly discounted Plaintiff's non-exertional impairments; and that the Commissioner failed to sustain his burden at step five of the sequential evaluation process. Pl.'s Br. Cumulatively, Plaintiff alleges, these errors resulted in the ALJ's unsupported and wrongful determination that Plaintiff is capable of performing work that exists in the national economy and is not "disabled." The Court finds that the ALJ did not improperly discount the opinions of one of Plaintiff's treating physician, Dr. Kammerman. However, the Court does find that the ALJ did not make an express credibility determination detailing her reasons for discrediting Plaintiff's testimony regarding disabling pain, and erroneously concluded that the Commissioner sustained his burden at step five of the sequential evaluation process.

### 1. The ALJ Did Not Improperly Discount the Opinions of Plaintiff's Treating Physician

Plaintiff challenges the ALJ's decision to assign less weight to the opinion of one of Plaintiff's treating physicians, Dr. Kammerman, which is a decision that may impact determinations

17

of medical severity in step two and three, and determinations of RFC in step four.  The ALJ found

that Dr. Kammerman's opinion was not supported by objective medical evidence and was

contradicted by Dr. Kammerman's own earlier statement.  Tr. 19.  Further, the ALJ decided to

assign the most weight to an opinion submitted by another of Plaintiff's treating physicians, Dr.

Galyon.  Tr. 19.  In determining Plaintiff's RFC, the ALJ accepted the opinion of Dr. Galyon that

Plaintiff could lift/carry 25 pounds occasionally and 20 pounds frequently, could push/pull up to 50

pounds, had unlimited sitting, standing, and/or walking, and occasional climbing, kneeling,

crouching, crawling, or stooping.  Tr. 19-20.

Under the Commissioner's regulations, the opinion of a treating source on the nature and

severity of a claimant's impairment is given controlling weight if it is well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other

substantial evidence.  20 C.F.R. §§ 404.1527(d), 416.927(d); see Schisler v. Sullivan, 3 F.3d 563

(2d Cir. 1993).  See also, SSR 96-2p (controlling weight may not be given to a treating source's

medical opinion if it is not well-supported by medically acceptable clinical and laboratory

diagnostic techniques and it is "not inconsistent" with the other substantial evidence in the case

record).  Plaintiff claims in his brief that the ALJ gave the state agency medical consultant's opinion

greater weight than Dr. Kammerman's opinion and that this was improper because the consultant

was not a physician.  Pl.'s Br. at 9.  While Plaintiff is correct that the state agency employee is not a

physician, he mischaracterizes the ALJ's handling of the medical file reviewer's opinion and the

relevant Commissioner regulations.

"It is well settled that an ALJ is entitled to rely upon the opinions of both examining and

non-examining State agency medical consultants, since such consultants are deemed to be qualified

18

experts in the field of Social Security disability." Dunn v. Comm'r of Soc. Sec., 2010 U.S. Dist.

LEXIS 136484 (N.D.N.Y. November 18, 2010); see also 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c),

404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2).  It is true that the Commissioner's

regulations explicitly state that the Commissioner will "[g]enerally . . . give more weight to opinions

from . . . treating sources."  20 C.F.R. § 404.1527(d).  Thus, if the opinion(s) of the treating sources

on the nature and severity of the impairment is well-supported and not inconsistent with other

evidence in the record, it will be given controlling weight.  20 C.F.R. § 404.1527(d)(2).  However, if

the opinion of the treating sources is not well supported or consistent with other evidence, the

Commissioner must consider several factors, such as the length of the treatment relationship and the

specialization of the treating source, in order to decide whether to accord the treating source's

opinion more weight.

　　　If the Commissioner shows that a treating source's opinion is not well-supported or not

consistent with the record, the regulations "permit the opinions of nonexamining sources to override

treating sources' opinions provided they are supported by evidence in the record."  Diaz v. Shalala,

59 F.3d 307 (2d Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)).  Thus, in this case, the ALJ was

permitted to use the state agency medical file reviewer to override Plaintiff's treating physician so

long as the medical file reviewers' opinion was supported by evidence in the record.

　　　Plaintiff also mischaracterizes the ALJ's handling of the state medical file reviewer's

opinion.  The ALJ never referred to this person as a physician but rather as a state agency expert

medical file reviewer, which was perfectly appropriate under the Commissioner regulations quoted

above. Tr. 19.  Moreover, this was not even a case in which the ALJ primarily relied on a state

agency medical file reviewer to override Plaintiff's treating physician, because the ALJ gave the

most weight to the medical opinion of another treating physician, Dr. Galyon. Tr. 19.

The ALJ was confronted with the opinions of two treating physicians, Dr. Galyon and Dr. Kammerman, whose assessment of Plaintiff's limitations contradicted one another. Tr. 19-20, 280-88. The ALJ discounted Dr. Kammerman's opinion and decided not to give it controlling weight because it was contradicted by Dr. Kammerman's own findings, another treating physician who was a specialist neurosurgeon with substantial clinical experience treating Plaintiff, and by the record as a whole. Tr. 19. Instead, the ALJ accorded the most weight to Dr. Galyon's opinion, because it was the opinion of a treating physician that was consistent with the medical file reviewer and the objective medical evidence. Tr. 19. Thus, the ALJ applied the appropriate regulations, which require the Commissioner to give the most weight to a treating source whose medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record. Tr. 19; SSR 96-2p, 1996 SSR LEXIS 9 at *11 (July 2, 1996).

The Court finds that substantial evidence supports the ALJ's findings that Dr. Kammerman's medical opinion should be discounted and Dr. Galyon's opinion should be accorded the most weight. First, as the ALJ noted, Dr. Kammerman's opinion that due to lumbar and cervical sprain, Plaintiff was not able to stand, walk or sit for the full eight-hour workday was not consistent with Dr. Kammerman's own notes which indicate only one month earlier that Plaintiff had no "structural problem that is progressing." Tr. 19, 275, 285-88.

In fact, Dr. Kammerman believed that Plaintiff's limitations in movement were at least partly due to his lack of activity. Tr. 275. And, as the ALJ documented, Dr. Kammerman expressed concern that Plaintiff was operating according to a "disability model." Tr. 275. Indeed, Dr. Kammerman's treatment notes indicate normal findings: that there was no evidence of swelling in

the lumbosacral region/cervical spine, grip strength was normal as were the biceps and triceps, straight leg rasing wasnegative; bilateral, hip, knee and ankle ranges of motion were full, and sensation was intact. Tr. 274. Dr. Kammerman also noted that Plaintiff needed to wean himself off of using a cane. Tr. 275.

Second, in 2005, Dr. Galyon, a neurosurgeon who first examined Plaintiff in 2002, opined that although Plaintiff had cervical radiculopathy, he was able to lift and carry up to 25 pounds, and his ability to stand, walk and sit were not affected. Tr. 225, 280-81, 283. According to Dr. Galyon, Plaintiff was frequently able to balance and occasionally climb, kneel, crouch, crawl and stoop. Tr. 281. Noteworthy is the fact that Dr. Galyon's assessment is consistent with the ability to perform light work, which was the ALJ's residual function capacity finding. 20 C.F.R. §§ 404.1567(b), 416.967(b); SSRs 83-10, 83-14. Because Dr. Galyon is a specialist neurosurgeon whose findings are "well supported in the doctor's own clinical reporting" and in accordance"with the rest of the medical evidence in the case," the ALJ explicitly found that his opinion carried the most weight. Tr. 19.

And third, Dr. Kammerman's limited assessment of Plaintiff's ability to perform work-related activities was not consistent with the overall record. Indeed, in addition to Dr. Kammerman's findings, the record reveals the following: Plaintiff had normal muscle strength in all groups and normal reflexes, no muscle spasms, "decent" range of motion of the cervical spine, negative straight leg raising, no motor or sensory deficits, and normal range of motion in the extremities. Tr. 226, 230, 231, 232, 237. In his opinion, the ALJ reviewed in detail the objective tests and medical reporting in Plaintiff's case, and found that "there is nothing in the objective clinical and/or laboratory reporting in this file to support such severe sitting or standing

restrictions." P. 17-19.

The Court finds that the ALJ's determinations regarding the weight that should be accorded to the opinions of Plaintiff's treating physicians are supported by substantial evidence in the record. Tr. 19.

### 2. The ALJ Did Not Making an Express Credibility Determination Detailing Her Reasons for Discrediting Plaintiff's Testimony

In completing step four of the sequential evaluation process, the ALJ found that Plaintiff's testimony was only partially credible. Tr. 20. According to the ALJ, Plaintiff claimed "that the symptoms of physical and mental impairments prevented performance of all work activity, without regard to the level of physical exertion required or any level of nonexertional demands." The ALJ only found Plaintiff's subjective account partially credible and "not accepted on their face at least not to the extent alleged," and consequently concluded that Plaintiff has the RFC to "lift/carry 25 pounds occasionally and 20 pounds frequently, push/pull up to 50 pounds, with unlimited sitting, standing, and/or walking, but occasional climbing, kneeling, crouching, crawling, or stooping." Tr. 20. The ALJ further found that Plaintiff has the RFC to "remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." Tr. 20.

Plaintiff argues that "it was inappropriate for the Administrative Law Judge to discount . . . [Plaintiff's] allegations of disabling pain and other non-exertional impairments." P. 10-11. Exertional limitations are those imposed by impairments and related symptoms that affect only a claimant's ability to meet the strength demands of jobs (*i.e.*, sitting, standing, walking, lifting, carrying, pushing, and pulling). See 20 C.F.R. §§ 404.1569a(b), 416.969a(b). "Nonexertional

22

limitations" are those imposed by impairments and related symptoms, such as pain, affecting a

claimant's ability to meet the requirements of jobs other than the strength demands. See 20 C.F.R.

§§ 404.1569a(c), 416.969a(c); S.R. No. 96-9PRodriguez v. Apfel, No. 96 Civ. 8330, 1998 WL

150981 at *10, n.12 (S.D.N.Y. Mar. 31, 1998). The Court finds that the ALJ did not adequately

explain and detail her reasons for partially discrediting Plaintiff's testimony regarding disabling

pain.

     It has been held that when rejecting an individual's complaints of disabling pain, the

Administrative Law Judge must make an express credibility determination detailing his reasons for

discrediting the testimony. See Rickets v. Sec. of Health and Human Services, 902 F. 2d 661 (2d

Cir. 1990). Failure to do so is reversible error. Id. at 663. The ALJ must consider several factors

pursuant to 20 C.F.R. §404.1529(c)(3) and §416.929(c) which require findings with regard to the

following factors: (1) the claimant's daily activities; (2) location, duration, frequency, and intensity

of claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage,

effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment

received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7)

any other factors concerning the claimant's functional limitations and restrictions due to symptoms.

See SSR 96-7p.

     In partially discrediting Plaintiff's complaints of disabling pain, the ALJ did not make

specific findings with regard to each of these factors. After commenting that Plaintiff's "overall

complaints are in excess of what might be expected from the objective medical demonstrations in

this record," the opinion discusses the reasons why the ALJ believes that Plaintiff has "little

attachment to the work force." Tr. 21. The ALJ then states that "the undersigned has considered the

claimant's allegations and testimony regarding the factors relevant to the reported symptoms,

(including daily activities, location, duration, and frequency and intensity of the pain of other

symptoms, precipitating and aggravating factors, the type, dosage, effectiveness and side effects of

any medications, treatment other than medication, and any other measures used to relief pain or

other symptoms, and any other factors)," and concludes that "because we find that the claimant is

not entirely credible, these allegations are not accepted on their face at least not to the extent

alleged." Tr. 20-21.

 However, it is not adequate for the ALJ to summarily state that she "considered" each of the

factors under 20 C.F.R. §404.1529(c)(3) and §416.929(c) without giving any specific reasons or

findings on these factors. According to Social Security Ruling Social Security Ruling 96-7P, "[i]f

an individual's statements about pain . . . are not substantiated by the objective medical evidence,

the adjudicator must consider all of the evidence in the case record . . . [and] make a finding on the

credibility of the individual's statements about symptoms and their functional effects." In making

this credibility determination, it "is not sufficient for the adjudicator . . . simply to recite the factors

that are described in the regulations for evaluating symptoms. The determination or decision must

contain specific reasons for the finding on credibility, supported by the evidence in the case record,

and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the

weight the adjudicator gave to the individual's statements and the reasons for that weight." Lewis v.

Apfel, 62 F. Supp.2d 648, 651 (N.D.N.Y. 1999) (quotation omitted).

 After reviewing the ALJ's opinion, it is unclear to the Court what conclusions the ALJ

reached on each of the factors enumerated in 20 C.F.R. §404.1529(c)(3) and §416.929(c). While

the ALJ explained that Plaintiff's statements regarding disabling pain were in excess of the

24

objective medical evidence, this Court will vacate and remand this case so that the ALJ has an opportunity to explain her findings regarding each of the required factors, and to detail how the evidence in the record bears on these findings.

### 3. The Administrative Law Judge Erroneously Concluded that the Commissioner Sustained his Burden at Step Five of the Sequential Evaluation Process

The Court finds that the ALJ erroneously concluded that the Commissioner had sustained his burden at step five of the sequential evaluation process. The ALJ provided the following hypothetical to the vocational expert and subsequently relied on this hypothetical in concluding the Commissioner was correct in asserting that Plaintiff can perform jobs in the national economy: "considering a person of the claimant's age, education and work history, this person is limited as follows: He can lift or carry 25 pounds regularly, 50 pounds occasionally, he shouldn't push or pull more than 50 pounds, there is no limited to standing, walking or sitting, he can occasionally climb, knee, crouch, crawl or stoop and frequently balance and there are no other limitations." Tr. 382. The Court finds that this hypothetical was flawed because it did not take into account non-exertional limitations, such as the difficulties with concentration and following complex instructions, that result from Plaintiff's mild mental retardation.

The Commissioner's reliance on the testimony of a vocational expert is misplaced when the vocational expert is presented with improper hypothetical questions. De Leon v. Secretary of Health and Human Services, 734 F.2d 930, 934 (2d Cir. 1984) (citing Tennant v. Schweiker, 782 F.2d 707, 711 (8th Cir. 1982) (holding that a vocational expert's testimony concerning a [plaintiff's] ability to perform alternative employment may only be considered for purposes of determining disability if

the question accurately portrays the [plaintiff's] individual physical and mental impairments and thus, the expert must have evaluated the [plaintiff's] particular impairments as contained in the record.)) In this case, the ALJ relied on the answers given by the vocational expert that Plaintiff was capable of performing activities of a routing clerk, a racker, and a cafeteria attendant, and the Commissioner subsequently upheld this decision. Tr. 7, 22. The Court concludes, however, that the vocational expert's testimony was based upon an incomplete hypothetical, and that the ALJ's reliance upon this vocational expert's answer was therefore misplaced. Tr. 382-83.

The ALJ found that Plaintiff suffers from the following impairments: lumbar spondylolysis and mild mental retardation. Tr. 18. She also found both of these impairments to be severe. Tr. 18. The regulations require that if a "severe" impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis. 20 CFR §§ 404.1523 and 416.923. Therefore, by failing to include Plaintiff's mild mental retardation (which the ALJ explicitly acknowledged was a medically determinable impairment) in the hypothetical, the ALJ provided a question to the VE that did not accurately and completely describe Plaintiff's condition, and then relied upon the VE's answer in reaching his determination that jobs exist in the national economy that Plaintiff can perform. Tr. 18; Edwards v. Barnhart, 383 F. Supp. 2d 920 (E.D. Mich. 2005) (ALJ's hypothetical limiting plaintiff to simple, routine, unskilled work was not adequate to convey limitations in the plaintiff's ability to concentrate, persist, and keep pace).

The assessment by Dr. Ransom clearly demonstrates that Plaintiff has limited capabilities as a result of his mild mental retardation. Tr. 301-07. Plaintiff cannot manage his own funds and can only do basic math calculations. Tr. 303. Additionally, Plaintiff should not drive nor take the bus. Tr. 303. The ALJ expressly found that Plaintiff has, as a result of his mild mental retardation,

26

"moderate limitations on his concentration, persistence, or pace." Tr. 19. Based upon these findings, it is unclear whether Plaintiff would be precluded from performing the duties of a routing clerk, a racker, or a cafeteria attendant, based upon his difficulties with concentration, persistence, or pace, his inability to do math calculations, or his difficulties following complex directions. What is clear is that the VE should have been alerted to these limitations when he answered the hypothetical.

According to the Dictionary of Occupational titles, a routing clerk must be able to the following: "Sorts bundles, boxes, or lots of articles for delivery: Reads delivery or route numbers marked on articles or delivery slips, or determines locations of addresses indicated on delivery slips, using charts. Places or stacks articles in bins designated according to route, driver, or type." National Academy of Sciences, Committee on Occupational Classification and Analysis, Dictionary of Occupational Titles: Part I - Current Population Survey, April 1971 (Washington, DC: U.S. Dept. of Commerce, 1981). This job involves tasks, such as reading delivery or routing numbers, sorting, and using charts, that may or may not be impacted by Plaintiff's mild mental retardation. The vocational expert upon which the ALJ relied did not have the opportunity to consider limitations on Plaintiff's concentration, persistence, or pace, nor his inability to do math, manage his own funds, or drive or take the bus, when he opined that Plaintiff was capable of performing these jobs. Therefore, it is apparent to the Court that those factors were not adequately taken into account when the ALJ determined that Plaintiff could perform work on a full-time basis in the national economy.


## V. CONCLUSION

Accordingly, it is hereby

27

**ORDERED**, that Plaintiff's Motion for judgment on the pleadings is **DENIED**, except to the extent that this action is remanded to the Secretary for further proceedings; and it is further

**ORDERED**, that Defendant's Motion for judgment on the pleadings is **DENIED**; and it is further

**ORDERED**, that the Commissioner's determination of no disability is **VACATED**, and the matter is **REMANDED** for further administrative proceedings; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED**.

DATED: March 03, 2011
        Albany, New York

Lawrence E. Kahn
U.S. District Judge